UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case Number: 22-mj-89** |
| v. | : | |
| | : | |
| | : | <u>**UNDER SEAL**</u> |
| **TANISHA SADULSKI,** | : | |
| | : | Detention Hearing:  May 10, 2022 |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF**
<u>**PRETRIAL DETENTION OF DEFENDANT TANISHA SADULSKI**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that defendant Tanisha Sadulski be detained pending the trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A), because the offense involves a crime of violence and because there is no condition or combination of conditions that will reasonably assure the appearance of the person as required and assure the safety of any person and the community. The defendant was arrested on May 5, 2022, and he has been charged via Criminal Complaint with the Sexual Exploitation of Children, in violation of Title 18 United States Code Section 2251(a), and Transportation of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(1).  As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is appropriate.

**APPLICABLE LEGAL STANDARD**

The Sexual Exploitation of Children is a felony under chapter 110 and is, therefore, a crime of violence.  Furthermore, it is also an offense involving a minor victim under section

1

2251(a) and thus, under 18 U.S.C. § 3142(e)(3)(E), creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008).  Even if the defendant does not pose a flight risk, danger to the community by itself is sufficient reason to order pretrial detention.  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the

presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## I. <u>Analysis</u>

For the reasons that follow, the government submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

### A. **Nature and Circumstances of the Charged Offense**

The government relies on the Statement of Facts that was filed with the Criminal Complaint. As stated therein, this defendant triggered four separate Cyber Tips to the National Center for Missing and Exploited Children for repeatedly uploading images and videos depicting the sexual abuse of children as young as infants and toddlers via her Google Account. Even worse, the defendant repeatedly took photographs of her granddaughter, in various states of undress and fully nude. She also filmed herself sexually assaulting her grandson, who is only a toddler. While the Defendant has denied distributing these images, she did admit to using Telegram in order to communicate with other offenders and to receive child pornography.

Children depicted in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized and re-traumatized each and every time an individual, like the defendant, views the images for their own sexual gratification. As recently explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose

3

Case 1:23-cr-00011-JDB   Document 8   Filed 05/09/22   Page 4 of 11

> without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.
>
> …every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Indeed, Congress has recognized the serious nature of the offense that this defendant is charged with, which is why she faces a mandatory minimum sentence of 15 years imprisonment, should he be convicted. *See* 18 U.S.C. § 2251(e).   As such, this first factor weighs heavily in favor of detention.

**B. The Weight of the Evidence Against the Defendant**

The weight of the evidence against the defendant is overwhelming.  The government is in possession of the NCMEC Cybertips, and has obtained the contents of the defendant's Google account.  As detailed above, this account contains images of infants being orally and vaginally raped.  Additionally, there are multiple pictures of the Defendant, including videos of hersexually assaulting her grandson.  The defendant's distinctive tattoo is visible, and her voice is recognizable in these images and videos.  Additionally, during the execution of the residential search warrant, law enforcement was able to identify the defendant's residence as the location

4

where these videos were created, and were able to find items of clothing that the children were wearing in the abuse images.

After executing the residential search warrant, law enforcement made contact with the defendant, and informed her that there was a warrant for her arrest. The defendant promised to surrender herself to a local precinct by that evening. She failed to do so. When contacted again by law enforcement, the defendant said that she would turn herself in the following day. Once again, the defendant failed to arrive at the precinct as promised. It took nearly a week, and several forms of legal process, to locate the defendant. When she was finally located, she was hiding with her son at her daughter's apartment. Outrageously, despite knowing that the Arrest Warrant was for charges relating to the sexual abuse of her children, the defendant's daughter was allowing her mother to continue to have access to the children. The defendant's flight in an effort to avoid arrest demonstrates consciousness of guilt. Thus, the weight of the evidence also weighs heavily in favor of detention.

## C. History and Characteristics of the Defendant

This defendant's criminal history began in 2002, when she was convicted of Destruction of Property and Receiving Stolen Goods, for which she served 90 days in prison. She has a 2007 conviction for violating the Controlled Substances, Drug and Cosmetic Act. Additionally, she has a 2011 conviction for Operating a Vehicle with a Suspended License.

While she does not have any prior sex offense arrests or convictions, this Court is well aware that the online sexual exploitation of children, and the hands-on sexual abuse of children, are crimes that are committed in secret. This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the internet, makes detection of these criminal offenses difficult. As this case demonstrates, the defendant was utilizing the Internet and various applications to meet individuals who are sexually attracted to children and who traffic in child

pornography.  She was also uploading child sex abuse material, including videos documenting the sexual abuse and exploitation of her own grandchildren, to her Google Account.  As the forensic examinations on digital devices recovered during the execution of the search warrant remains ongoing, we have yet to determine the full scope of the defendant's criminal conduct at this time, and the government will continue its investigation in order to rule out the existence of additional victims and perpetrators.

The mere lack of an arrest record for sex offenses' significance should be called into question in cases involving the sexual exploitation and abuse of children, because it is well-known that children often do not disclose sexual abuse, and that these types of crimes are wildly underreported.  *See United States v. Gregory Todd Numan*, 3:160cr000065(TMB)(DAK)(February 26, 2018:  Expert Testimony of Clinical Psychologist Darrell Turner).  In *Numan*, Dr. Turner provided expert testimony to the Court to explain why a reliance on the lack of prior criminal history of an offender charged with sexual offenses committed against children does not serve as a reliable indicator of their future risk for reoffending.  As explained by Dr. Turner:

> "One of the main problems is the fact that these offenses
> are among the most undetected offenses that there are. This
> is not like bank robbery or murder, where it's generally assumed
> and expected that it's going to be detected and reported. We know
> from research that about only about five percent of sexual offenses against
> children are ever reported.
>
> Of those, of that five percent, about another five percent
> result in a conviction. So we're talking about an exponentially
> small number of offenses that are reported and accounted for.
> So it's sort of akin to saying there were only four drunk people in
> New Orleans in Mardi Gras this year because there were only four
>  arrests for public intoxication, and it's not a good representation of what's
> actually going on out there. So to say it without the qualifier that,
>  hey, this is a gross underestimate, but you know, so far, this is what

>we've been able to find, I think, is misleading and very, very dangerous."

at pages 22-23.  See also K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11 PSYCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Association, 2005)(finding in a study of adult retrospective victim studies about child sex abuse, approximately 60 – 70% of adults sexually abused as children did not recall disclosing the abuse during childhood);  *See also* D. W. Smith, E. J. Letourneau, B. E. Saunders, D. G. Kilkpatrick, H. S. Resnick & C. L. Best, *Delay in Disclosure of Childhood Rape: Results from a National Survey*, 24 CHILD ABUSE & NEGLECT 2, 273-87 (2000)(the results of the study found that only 12% of child rape victims' assaults were reported to law enforcement authorities.).  As such, the fact that the defendant lacks a criminal history related to sex offenses, given the ways in which these types of crimes are committed and the reluctance and inability of the victims to disclose, should be given less weight, given the nature of the offenses she is currently charged with.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

As detailed above, the production of child sex abuse material, and the sexual assault of young children, presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless number of children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children.    It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, New York v. Ferber, 458 U.S. 747 (1982)*,* the Supreme

Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 458 U.S. 758, n.9.

Moreover, as the Eastern District of New York has found:

> ...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of

various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

When considering the issue of detention, it is important for this Court to consider that sex offenders have a high rate of recidivism. *See Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (noting that the lower court's concerns about recidivism was supported by substantial authority (citing *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("The risk of recidivism posed by sex offenders is frightening and high.") (citations omitted); *McKune v. Lile,* 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault"); *United States v. Irey,* 612 F.3d 1160, 1214 (11th Cir.2010) ("[T]he threat of recidivism by a pedophile who has sexually abused a child is appalling.") (citation and quotation marks omitted); *United States v. Allison,* 447 F.3d 402, 405–06 (5th Cir.2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.")); *see also United States v. Allison*, 447 F.3d 402, 405-406 (5th Cir. 2006) (Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders). Indeed, As Judge Posner recently wrote:

> We need evidence-driven law just as we need evidence-driven medicine. Statistical analysis of sex crimes has shown that the best predictor of recidivism is not

9

> deportment at an interview but sexual interest in children. R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, "Sexual Offender Recidivism Risk: What We Know and What We Need to Know," 989 Annals of the N.Y. Academy of Sciences 154, 157 (2003) (tab.1). Some studies show a high rate of recidivism among pedophilic sex offenders generally, ranging from 10 percent to 50 percent. Ryan C.W. Hall & Richard C.W. Hall, "A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues," 82 Mayo Clinic Proceedings 457, 467 (2007). Another study found that only 6.8 percent of consumers of child pornography had been charged with a new child-pornography offense within 4 years but that the percentage rose to 9.5 percent within 6 years. Angela W. Eke, Michael C. Seto & Jennette Williams, "Examining the Criminal History and Future Offending of Child Pornography Offenders: An Extended Prospective Follow-up Study," Law & Human Behavior, Nov. 19, 2010 (tab.1), www.springerlink.com/content/h4616862621x8616/ (visited June 23, 2011).

*United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011).

This risk of re-offense while on release, in light of the fact that the defendant's charged criminal conduct, a crime of violence involving a minor victim, emphasize that she has been, and continues to be, a danger to some of the most vulnerable members of our community: children. For these reasons, it is clear that the defendant poses a significant danger to the community and, given this risk, there are no condition or combination of conditions that will reasonable keep the community safe if the defendant is released. As such, this factor weighs heavily in favor of detention.

## **CONCLUSION**

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar. No. 415082


 /s/  *Amy E. Larson*
Amy E. Larson, N.Y. Bar Number 4108221
Assistant United States Attorney
601 D. Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7863
Email: Amy.Larson2@usdoj.gov